THE BROADWAY SAVINGS INSTITUTION of the City of New York, Respondent, *v.* THE TOWN OF PELHAM, of Westchester County, Appellant.

*Certificates of indebtedness issued by a municipality under chapter* 193 *of the Laws of* 1877 — *notice to a purchaser of statutory conditions — municipality estopped to deny certain facts — informalities in the fulfillment of a condition precedent.*

One who purchases certificates of indebtedness purporting to be issued by a town in accordance with the provisions of chapter 193 of the Laws of 1877, although he does so in good faith, must see to it that they are authorized by the statute under which they purport to have been issued.

The facts which a municipal corporation issuing bonds is not permitted, as against a *bona fide* holder, to question, in the face of a recital in the bond of their existence, are those facts connected with or growing out of the discharge of the ordinary duties of such of its officers as are invested with authority to

execute them, and which the statute conferring the power makes it their duty to ascertain and determine before the bonds are issued; but a municipal corporation is permitted to assert and prove against a *bona fide* holder of its bonds the fact that their issue was not authorized by any legislative authority.

When an instrument refers on its face to a statutory power, every holder is made chargeable thereby with notice of the statute and its limitations. In such case a person dealing with the agent, knowing that he acts only by virtue of a delegated power, must, at his peril, see that the paper on which he relies comes within the power under which the agent acts. And this applies to every person who takes the paper afterwards, for the protection which commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued.

Whenever negotiable paper is found in the market, purporting to bind the government, it must necessarily be authenticated by the signature of an officer of the government, and the purchaser of such paper, whether the first holder or another, must, at his peril, see that the officer had authority to bind the government.

Mere informalities or irregularities in the fulfillment of a condition precedent to a grant of power to an agent to issue bonds, or in the exercise of that power when granted, do not render the bonds of the principal, a municipal corporation, invalid in the hands of an innocent holder; but this rule is limited to instances in which the officer issuing the bonds is also permitted by the statute to determine whether a fact, made a condition precedent to the exercising of his power, exists. In such case his recital is a decision and binds the municipality.

The authority of the town of Pelham to issue certificates of indebtedness under the provisions of chapter 193 of the Laws of 1877 depends upon a return having been made by the town collector of unpaid taxes to the supervisor, and a direction to the supervisor, from the board of town officers named in the statute, to borrow upon the credit of the town a sum not exceeding the amount of such unpaid taxes; these are conditions precedent to the power of the supervisor to act, and unless both conditions exist, the supervisor is without legal authority to borrow money upon the credit of the town and to issue its certificates of indebtedness; in case neither of such facts existed, certificates issued by the supervisor are void, and a recital in the certificates that such conditions existed does not bind the town, for the reason that neither the supervisor nor the town clerk was charged by the statute with the duty of determining such facts.

APPEAL by the defendant, The Town of Pelham, of Westchester county, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 12th day of April, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the Westchester Circuit.

This action was brought to recover the amount of eight certificates of indebtedness of the town of Pelham, purporting to have

HUN — VOL. LXXXIII.       13

been issued in accordance with the provisions of chapter 193, Laws of 1877, entitled "An act to amend chapter 610 of the Laws of 1874, entitled 'An act to authorize the sale of lands for the non-payment of taxes and for the collection of unpaid taxes in the several towns of the county of Westchester.'" This statute required collectors of taxes of the towns of Westchester county, within ten days after the expiration of their warrants, to make and deliver to the supervisors of their respective towns a sworn statement of the amount of taxes remaining unpaid at the expiration of their warrants. Upon receiving from the collector such a statement, the supervisor was required, on or before the first day of May next after such return, and under the direction and authority of a board of town officers, consisting of the supervisor, the justices of the peace and the town clerk, or a majority of them, to borrow, upon the credit of the town, a sum not exceeding the amount of the unpaid taxes so returned. For the sum so borrowed he was authorized to issue certificates of indebtedness of the town, signed by himself and countersigned by the town clerk. The town clerk was directed to keep a record of the certificates, and of their amounts and times of payment. Three of the certificates in suit bore date April 23, 1892, and were sold to the plaintiff on the twenty-eighth of the same month. The balance of them bore date of May 18, 1892, and were sold to the plaintiff on that day. Each certificate recited that it was issued in accordance with the provisions of the statute above referred to, and was signed by the supervisor of the town, and purported to have been countersigned by the town clerk. The answer of the town denied the allegation of the complaint in reference to the execution of said certificates and their delivery to the plaintiff, and alleged that no authority for issuing them was ever given by the proper town authorities as required by the statute; that the amount was largely in excess of the unpaid taxes for the year for which they purported to have been issued, and that certificates for the correct amount had theretofore been issued by defendant and sold and paid, and that the signatures upon the certificates purporting to be that of the town clerk were forgeries.

Upon the trial the court excluded all testimony offered to prove the allegations of the answer, and directed a verdict for the plaintiff for the full amount claimed.

From the judgment entered upon the verdict this appeal was taken.

*Martin J. Keogh*, for the appellant.

*William H. Robertson*, for the respondent.

BROWN, P. J.:

In excluding the testimony offered by the appellant, the court decided that the facts pleaded in the answer were immaterial to the controversy between the parties, and, if proved, would not have constituted a defense to the action. In substance, it held that the town was bound by the recital in the certificates issued by the supervisor, and by his representations as to the genuineness of the signature of the town clerk. We may, therefore, examine the case upon the assumption that, if the evidence offered by the appellant had been admitted, the jury would have determined the facts to be as set forth in the answer; and, for the purposes of this appeal, we shall presume that the several certificates sued upon were issued without authority or direction of the board of town officers named in the statute; that the signature of the town clerk thereto was forged; that the aggregate amount of the certificates sold to plaintiff was largely in excess of the unpaid taxes for the year 1891, and that for the actual amount of unpaid taxes for that year, genuine certificates had been issued and sold by the town. The proposition that the recitals in the certificates were conclusive upon the appellant as to the facts therein stated cannot be sustained under the decisions of this State. So much has been written in the judicial opinions on this subject that it is unnecessary to do more than to cite the authorities; and, in our own State, it is settled that one who purchases instruments of the character of those in suit, although he does so in good faith, must see to it that they are authorized by the statute under which they purport to have been issued. (*Starin* v. *Town of Genoa*, 23 N. Y. 439; *People ex rel. Fiedler* v. *Mead*, 36 id. 224; *Town of Venice* v. *Woodruff*, 62 id. 463; *Cagwin* v. *Town of Hancock*, 84 id. 532; *Craig* v. *Town of Andes*, 93 id. 405.)

The facts are also insufficient to bring the case within the rule applied by the Supreme Court of the United States in the cases cited by the plaintiff. (*Commissioners of Knox County* v. *Aspinwall*,

21 How. [U. S.] 541; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Northern Bank* v. *Porter Township*, 110 id. 608.)

In those cases it was decided that the facts which a municipal corporation issuing bonds was not permitted against a *bona fide* holder to question, in face of a recital in the bond of their existence, were those connected with or growing out of the discharge of the ordinary duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued. (*Northern Bank* v. *Porter Township, supra,* 617.)

In *Anthony* v. *County of Jasper* (101 U. S. 693) it was said: "Dealers in municipal bonds are charged with notice of the laws of the State granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality, the *bona fide* holder is protected against mere irregularities in the manner of its execution; but if there is a want of power no legal liability can be created."

I know of no authority in that court to the effect that a municipal corporation is not permitted to assert and prove against a *bona fide* holder of its bonds the fact that they were not authorized by any legislative authority.

In *Northern Bank* v. *Porter Township* (*supra*) the authority of the township to make a subscription to a railroad was, by the statute, made dependent upon the fact that county commissioners had not been authorized to make a subscription. The bonds in suit recited that they had been issued " in pursuance of the provisions of the several acts of the General Assembly of the State of Ohio, and of a vote of the qualified electors in said township," and it was contended by the plaintiff that the town was estopped by that recital from asserting as a defense the fact that the condition upon which the authority of the town to make the bonds depended did not exist. This contention was overruled and the bonds were declared invalid, the court saying, " the question of legislative authority in a municipal corporation to issue bonds in aid of a railroad company cannot be concluded by mere recitals."

When an instrument refers on its face to a statutory power, every holder is made chargeable thereby with notice of the statute and its limitations. The rule of law governing cases of this character is

very clearly stated in the case of *Floyd's Acceptances* (7 Wall. 676) as follows : " In each case a person dealing with the agent, knowing that he acts only by virtue of a delegated power, must, at his peril, see that the paper on which he relies comes within the power under which the agent acts. And this applies to every person who takes the paper afterwards, for it is to be kept in mind that the protection which commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued. * * * Whenever negotiable paper is found in the market, purporting to bind the government, it must necessarily be by the signature of an officer of the government; and the purchaser of such paper, whether the first holder or. another, must, at his peril, see that the officer had authority to bind the government."

In numerous cases the Supreme Court of the United States has held that mere 'informalities or irregularities in fulfillment of a condition precedent to a grant of power to an agent, or in the exercise of that power, when granted, would not render the bonds invalid in the hands of an innocent holder ; but no case has gone to the extent of upholding the bonds when there was a total want of power in the agent who issued them. The rule applied by that court is limited to instances in which the officer issuing the bonds is also permitted by the statute to determine whether a fact, made a condition precedent to the exercising of his power, exists. In such a case his recital is a decision and binds the municipality.

Authority to issue the certificates in suit depended (1) upon a return by the town collector of unpaid taxes to the supervisor.; (2) a direction to the supervisor from the board of town officers named in the statute to borrow upon the credit of the town a sum not exceeding the amount of unpaid taxes.

These were conditions precedent to the power of the supervisor to act, and unless both existed the supervisor was without legal authority to borrow money upon the credit of the town and to issue its certificates of indebtedness. Neither fact existed in this case, and, consequently, the certificates were void.

The recital in the certificates that these conditions existed could not bind the town under the rule applied in the Supreme Court of the United States, for the reason that neither the supervisor nor town clerk was charged by the statute with the duty of determining

those facts. If the condition did not exist, then the power granted by the statute did not become operative, and it could not be said that there was legislative authority for the borrowing of the money.

On this precise point the distinction exists between the case at bar and *Gifford* v. *Town of White Plains* (25 Hun, 606), upon which plaintiff relies. In *Gifford's* case the condition required by the statute existed. There was a return by the collector and a direction by the town board to the supervisor to borrow the money. But the amount named in the resolution of the town board was subject to reduction by the supervisor to the extent of the amount of money in his hands applicable to the payment of the unpaid taxes. What that amount was no one knew but the supervisor, and he necessarily by the resolution of the town board was made the person to determine it. Issuing a certificate in proper form was held to be equivalent to a declaration by the supervisor that he had not exceeded his authority. It was a decision which bound the town, and so long, therefore, as the total amount of the certificate did not exceed the amount authorized by the town board, or the amount stated in the collector's return, a *bona fide* purchaser of the certificate was protected. And the plain distinction between the two cases is, that in that case there was legislative authority and in the case before us there is none.

The statute further made it the duty of the town clerk to keep a record of the certificates and the amount and time of their payment. This record was open to inspection, and an examination of it would have disclosed to the plaintiff the fact not only that the particular certificates in suit were unauthorized, but also that the power of the town officer had been exhausted by borrowing the actual amount of the unpaid taxes upon other genuine certificates. We think the plaintiff is chargeable with notice of this provision of the statute, and its failure to make an examination of the record deprives it of the standing of an innocent holder of the securities. (*Thompson* v. *Town of Mamakating*, 37 Hun, 400 ; 106 N. Y. 674.)

In respect to the amount of the certificates, no distinction can be drawn between the case at bar and that last cited. In that case it appeared that the town was authorized by statute to issue bonds to the amount of $175,000. The bond sued upon was in excess of that amount and had been issued by mistake. Although the plain-

tiff was a purchaser for value without notice of the defect, the right to recover was denied upon the ground that he was chargeable with notice of the limitation put by the statute upon the power of the town commissioners, and was bound to ascertain, at his peril, that all the conditions requisite to the execution of their power had been observed and performed. In this case if it had appeared, as defendant offered to show, that the total amount of unpaid taxes for the year 1891 was less than $3,000, the plaintiff, under the authority of the case cited, was chargeable with notice that the certificates amounting to $4,600, purchased on the eighteenth of May, were unauthorized by statute, and were for that reason void.

We are of the opinion that the evidence offered by the appellant to sustain the allegation of the answer was admissible, and if the facts therein alleged, and which we have assumed in this opinion to be true, had been established, the conclusion would necessarily have followed that the certificates were void. The conclusion we have reached renders it unnecessary to consider the question as to the forgery of the town clerk's signature. If the condition did not exist under which the Legislature had alone authorized the town to borrow money and issue certificates, the genuine signature of the town clerk, if signed to them, could not give to them validity.

The judgment must be reversed and a new trial granted, with costs to abide the event.

CULLEN, J., concurred ; DYKMAN, J., not sitting.

Judgment reversed and new trial granted, costs to abide event.